## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JAMES GLASGOW,**

                **Plaintiff,**        **Case No. 8:23-cv-02321-KKM-CPT**

**v.**

**GRASS VALLEY USA, LLC,**
**a foreign limited liability company; and**
**GRASS VALLEY CANADA ULC,**
**a foreign corporation; and**
**BLACK DRAGON CAPITAL, LLC,**
**a Florida limited liability company.**

                **Defendant.**

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JAMES GLASGOW[1] [2](hereinafter "Plaintiff" or "Glasgow"), by and through his undersigned attorneys, hereby sues Defendants, GRASS VALLEY USA, LLC, a foreign limited liability company ("GV USA"), and GRASS VALLEY CANADA ULC, a foreign corporation ("GV Corporate"), and BLACK DRAGON CAPITAL, LLC ("Black Dragon") (hereinafter collectively "Defendants" or "Grass Valley"), and alleges as follows:

### Nature of Action/ Preliminary Statement

1.    Plaintiff was a long standing and well performing employee of Defendants.

---

[1] Plaintiff's surname is toponymic.
[2] Glasgow is a city in Scotland, United Kingdom.

2.     Defendants terminated Plaintiff by selecting him for a reduction in force ("RIF") because of Plaintiff's age and/or race, ethnicity, ancestry, and national origin.

3.     As such, Plaintiff seeks to enforce his rights under the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et. seq.* as amended ("ADEA"), and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes, as amended ("FCRA").

## Parties, Jurisdiction and Venue

4.     Plaintiff is a White citizen of the United States of Scottish ancestry.

5.     Plaintiff is over 40 years old.

6.     Plaintiff is a resident of Hillsborough County, Florida.

7.     At all times relevant to this action, Plaintiff was an employee of Grass Valley.

8.     Plaintiff is an aggrieved person within the meaning of the FCRA.

9.      Plaintiff is an aggrieved person within the meaning of the ADEA.

10.      Plaintiff is an aggrieved person within the meaning of Title VII.

11.     GV USA is headquartered in Montreal, Quebec, Canada and has its principal place of business in Oregon.

12.     GV USA conducts business in the United States as well as throughout the State of Florida.

13.     GV USA is the American subsidiary of and/or a related entity of GV Corporate, which is also known as Grass Valley Canada.

14.     Black Dragon has a principal address of 6400 W. Boynton Beach Blvd, Ste. 740486, Boynton Beach, Florida 33437, and conducts business in the State of Florida.

15.     Black Dragon is an American private equity firm, and a Florida limited liability company located in Boynton Beach, Florida.

16.     At all times relevant to this action, GV Corporate is headquartered in Montreal, Quebec, Canada, and conducts business in the United States.

17.     At all times relevant to this action, GV Corporate maintained two physical offices in the United States—California and Oregon.

18.     The initial complaint in this action was served on Defendants, including a French translation upon GV Corporate, as the company is headquartered in Montreal, Quebec, Canada.

19.     At all times relevant to this action, GV USA was owned and operated by GV Corporate.

20.     At all times relevant to this action, GV USA was owned and operated by Black Dragon.

21.     At all times relevant to this action, GV Corporate was owned and operated by Black Dragon.

22.     Defendants employed 15 or more persons for 20 calendar weeks during the current or preceding calendar year, and, as such, are an "employer" within the meaning of Title VII and the FCRA.

23.     Defendants employed 20 or more persons for 20 calendar weeks during the current or preceding calendar year, and, as such, are an "employer" within the meaning of the ADEA.

24.     Defendants removed this matter to this Court on October 12, 2023 on the basis of 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

25.     Additionally, this Court has supplemental jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1367.

26.     Venue in this Court is proper as the effects of the unlawful employment practices described herein occurred in Hillsborough County, Florida.

27.      Glasgow is a resident of Hillsborough County, Florida.

28.     Glasgow was employed by the Defendants as a remote worker in Hillsborough County, Florida.

29.     Hillsborough County, Florida is located within the United States District Court for the Middle District of Florida, Tampa Division.

30.     Venue is proper in this Court because it is "the district and division embracing the place where the action is pending," 28 U.S.C. § 1441(a).

31.     This Court has personal jurisdiction over GV Corporate pursuant to Fla. Stat. 48.193(1)(a)(1), 48.193(1)(a)(2), and 48.193(1)(a)(6), and by virtue of its

purposeful availment to and minimum contacts with Florida, including and but not limited to:

a. GV Corporate transacted and still transacts business in the State of Florida, serving a large number of Florida clients and generating significant revenue from Florida clients.

b. GV Corporate was an employer of Glasgow who resided and has worked remotely for Grass Valley in Florida since approximately December 2020.

c. GV Corporate  purposefully availed itself of the privileges of doing business with Florida by employing staff, including Glasgow, in Florida.

d. GV Corporate  purposefully availed itself of the privileges of doing business with Florida by accepting work product of Glasgow performed in Florida.

e. GV Corporate  purposefully availed itself of the privileges of doing business with Florida by implementing policies which governed its Florida employees, specifically Glasgow.

f. Glasgow's home office and equipment was used exclusively for his employers' business, and Glasgow worked remotely for his employers' benefit.

g. The injuries alleged in this lawsuit arise from Plaintiff's employment with GV Corporate.

h. GV Corporate is alleged to have violated Florida statutory law as well as corresponding federal law within the State of Florida.

i. GV Corporate's actions as alleged herein caused injury to the Plaintiff within the State of Florida.

j. The tortious acts of GV Corporate as alleged herein were committed within the State of Florida.

k. GV Corporate's actions necessarily affected employees in Florida, namely Glasgow.

l. Glasgow received unemployment compensation benefits from the State of Florida.

32. This Court has personal jurisdiction over GV USA pursuant to Fla. Stat. 48.193(1)(a)(1), 48.193(1)(a)(2), and 48.193(1)(a)(6), and by virtue of its purposeful availment to and minimum contacts with Florida, including and but not limited to:

a. GV USA transacted and still transacts business in the State of Florida, serving a large number of Florida clients and generating significant revenue from Florida clients.

b. GV USA was an employer of Glasgow as well as other employees who resided and worked remotely for Grass Valley in Florida.

c. GV USA purposefully availed itself of the privileges of doing business with Florida by employing staff, including Glasgow, in Florida.

d. GV USA purposefully availed itself of the privileges of doing business with Florida by accepting work product of Glasgow performed in Florida.

e. GV USA purposefully availed itself of the privileges of doing business with Florida by implementing policies which governed its Florida employees, specifically Glasgow.

f. Glasgow's home office and equipment was used exclusively for his employers' business, and Glasgow worked remotely for his employers' benefit.

g. The injuries alleged in this lawsuit arise from Plaintiff's employment with GV USA.

h. GV USA is alleged to have violated Florida statutory law as well as corresponding federal law within the State of Florida.

i. GV USA's actions caused injury to the Plaintiff within the State of Florida.

j. The tortious acts of GV USA as alleged in this lawsuit were committed within the State of Florida.

k. GV USA is registered with Florida's Division of Corporations to conduct business in the State of Florida.

l. GV USA's actions necessarily affected employees in Florida, namely Glasgow.

m. Glasgow received unemployment compensation benefits from the State of Florida.

33. Plaintiff has met all conditions precedent and exhausted all administrative remedies prior to filing suit, based upon the following:

a. Dual filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") on or about January 14, 2022, against GV USA and on January 19, 2022, against GV Corporate.

b. The same attorney representing both GV USA and GV Corporate before the state agencies.

c. Black Dragon sharing the same legal counsel that represented GV USA and GV Corporate before the administrative agencies.

d. GV USA, GV Corporate and Black Dragon retaining a singular firm to represent them in this lawsuit.

e. Black Dragon having notice and knowledge of the EEOC/FCHR Charges based upon its parent/subsidiary relationship with GV USA and GV Corporate.

f. Upon information and belief, Black Dragon receiving notice of the EEOC/FCHR Charges against GV USA and GV Corporate and an opportunity to participate via notice to the Defendants' shared officer Louis Hernandez, Jr., who is the Chief Executive Officer of all the Defendants.

g.      Upon information and belief, Black Dragon having knowledge of the EEOC/FCHR Charges against GV USA and GV Corporate and an opportunity to participate via the knowledge of the Defendants' shared officer, Louis Hernandez, Jr., who is the Chief Executive Officer of all the Defendants.

h.      As the owner and controlling entity of Grass Valley as outlined herein, Black Dragon having actual and/or constructive notice of Glasgow's charges of discrimination and an opportunity to participate in the EEOC proceedings.

i.      As the owner and controlling entity of Grass Valley as outlined herein, Black Dragon having access to the EEOC portal.

j.      The EEOC being aware of Black Dragon as a respondent.

k.       The EEOC having the opportunity to investigate Black Dragon and conciliate.

l.      Defendants being functionally identical, as alleged herein.

m.      There being a similarity of interest between Black Dragon and GV USA and GV Corporate.

n.      Filing this action more than 180 days from the time Plaintiff filed his Charge of Discrimination without the FCHR issuing a determination on the charge and/or filing within one year of receiving a Determination and Notice of Rights ("Right to Sue") from the EEOC.

o.     Filing this action within 90 days of receipt of the Right to Sue, which was issued by the EEOC on June 22, 2023.

## Facts

34.     Glasgow's national origin/race/ancestry/citizenship is a White American of Scottish ancestry.

35.     Plaintiff was born in 1958.

36.     Grass Valley is a well-established company that started in the United States in 1959 and is the leading technology provider for the live media and entertainment market, including broadcast and professional audio/video equipment manufacturers.

37.     At all times relevant to this Complaint, Grass Valley maintained physical offices in California and Oregon, with the principal address of 1600 NE Compton Drive, Suite 100, Hillsboro, Oregon 97006.

38.     GV USA registered as a foreign limited liability with the Florida Division of Corporations on or about December 9, 2010, authorizing it to conduct business in the State of Florida.

39.     Black Dragon, a Florida private equity firm, owns both GV USA and GV Corporate and exercises control over both GV USA and GV Corporate.

40.     The entities are so functionally intertwined and, in effect, are one employer—Grass Valley— or at the very least, Defendants are joint employers of Glasgow.

41.     As more thoroughly alleged herein, Grass Valley shares common management structures (including significant overlap in officers, directors, and personnel), shares a common address and office space, shares common ownership and financial control, and shares control over company operations, including but not limited to sharing and contributing to the personnel decisions at all levels of the organization.

42.     GV USA and GV Corporate share the same headquarters and office space in Montreal, Quebec, Canada, specifically at 3499 Douglas-B-Floreani, Montreal, Quebec, Canada, H4S 2C6.

43.     GV USA and GV Corporate share a website at www.grassvalley.com.

44.     On its website, Grass Valley indicates that its worldwide headquarters is in Montreal, Quebec, Canada, , but also has locations in North America, which is where GV USA conducts business.

45.     In effect, GV USA and GV Corporate are one and the same entity.

46.      GV USA and GV Corporate are owned by Black Dragon.

47.     In the "About Us" page of Grass Valley's website, Grass Valley states that it is "headquartered in Montreal....and is now part of Black Dragon Capital." The website then links to Black Dragon's website, which states that "Grass Valley is wholly owned by Black Dragon Capital".

48.     Defendants' publicly available website does not distinguish GV USA from GV Canada.

49.     In addition to sharing the same headquarters and office space, GV USA, GV Corporate, and Black Dragon have overlap in officers, directors, and employees. For example, upon information and belief, during times material and relevant herein:

a.     Louis Hernandez, Jr. was (and still is) the Executive Chairman and Chief Executive Officer of both GV USA and GV Corporate.  Louis Hernandez, Jr. is also the founder, management partner, and Chief Executive Officer of Black Dragon.

b.     Christian Bernard was (and still is) the Global Chief Supply Chain Officer for both GV USA and GV Corporate.

c.     Michael Hofer served as the Chief Financial Officer for both GV USA and GV Corporate.

d.     Jan Lange served as the Chief Revenue Officer for both GV USA and GV Corporate.

e.     Sydney Lovely served as the Chief Technology Officer for both GV USA and GV Corporate.

f.     Neil Maycock served as the Chief Marketing Officer for both GV USA and GV Corporate.

g.     Fabrizio Alcobe-Fierro was the Chief Human Resources Officer and Head of Internal Communications for both GV USA and GV Corporate.

h.     Richard Sussman is a Partner of Black Dragon but is also listed as a Member of GV USA with the Florida Division of Corporations.

50.     Upon information and belief, the directors and/or executives of GV Corporate interact with the officers and employees of GV USA to such a degree that GV Corporate (as controlled by Black Dragon), in effect, running the day-to-day operations of Grass Valley in the United States and worldwide.

51.     The financial and banking operations of GV USA and GV Corporate are also significantly interrelated.

52.     Black Dragon has full control of Grass Valley and all of its assets.

53.     Black Dragon and GV USA utilize the same registered agent.

54.     Upon information and belief, GV USA and GV Corporate use the equipment, property, and/or proprietary information of each other in the day-to-day operations.

55.     Upon information and belief, GV USA and GV Corporate are all consolidated into Grass Valley in their financial statements.

56.     Upon information and belief, Black Dragon consolidates, as well as assumes, Grass Valley's profits and losses on Black Dragon's annual financial statements.

57.     Upon information and belief, Black Dragon controls and/or participates in employment-related decisions for all leadership positions (i.e., Director level and above) for GV USA as well as GV Corporate (and other locations worldwide).

58.     Upon information and belief, GV Corporate controls and/or participates in employment-related decisions for all leadership positions (i.e.,

Director level and above) for GV USA as well as GV Corporate (and other locations worldwide).

59.     Specifically, when determining the RIF, Black Dragon and GV Corporate, including but not limited to CEO Louis Hernandez, participated in and led the decisions on which positions to eliminate for GV USA.

60.     Upon information and belief, GV USA and GV Corporate share centralized control of labor relations and human resources functions.   For example, and upon information and belief:

     a.     Grass Valley advertises positions for all locations within the organization, including GV USA and GV Corporate, on its singular website.

     b.     GV Corporate and GV USA collaborated in setting the hiring standards and qualification requirements for filling open positions; however, GV Corporate's input governed such standards and qualification requirements.

     c.     GV Corporate had a global employment handbook and/or certain personnel policies that applied to all employees worldwide and including employees of GV USA.

     d.     GV Corporate and Black Dragon made the final decisions for all pay-related matters for all leadership positions throughout the company, including GV USA.

61.     There is such significant overlap of shared personnel between Defendants that any one person can hold a position with one or both of the Defendants at any one time, such that one person may be an employee of one

defendant while simultaneously acting as an employee or agent or officer of the other defendant.

62.     In addition to employment matters, Grass Valley's CEO Louis Hernandez (who is also the founder, managing partner, and CEO of Black Dragon which owns Grass Valley) controls the day-to-day operations of GV USA and has the exclusive power and authority to manage the organization as a whole.

63.     Upon information and belief, Black Dragon (a Florida limited liability company), dominates and controls GV USA to such an extent that GV USA does not act independently in the interest of themselves separate from GV Corporate or Black Dragon, but rather GV USA functions solely to achieve the purposes of the company as a whole.

64.     Upon information and belief, GV Corporate also dominates and controls GV USA to such an extent that GV USA does not act independently in the interest of themselves separate from GV Corporate or Black Dragon, but rather GV USA functions solely to achieve the purposes of the company as a whole.

65.     Glasgow began working for Grass Valley in 1994. At all times relevant herein, Glasgow reported to the Montreal, Quebec, Canada office.

66.     At all times relevant herein, Glasgow worked 100% remotely from Hillsborough County, Florida.

67.     Glasgow held various leadership positions with Grass Valley, including but not limited to Vice President of Training, the position he held at the time of his termination.

68.     Grass Valley entrusted him with these leadership positions and responsibilities because of his success throughout his tenure.  In fact, he had the opportunity to manage most areas of the business, including creating and managing an audit-compliant demonstration and loan process and department, and creating a used sales process that generated over $42M in sales.

69.     Glasgow was the Vice President responsible for training since approximately 2014, with most of that time reporting into the Global Service and Support business unit as the Vice President of Global Service and Support Operations.

70.     Global Service and Support was not solely dedicated to training. The majority of its staff consisted of service engineers who provided technical support to customers when they experienced technical problems with equipment.

71.     Prior to holding the position of Vice President of Training, Glasgow held the position of Vice President of Global Service and Support Operations from approximately 2014 until that business unit was dissolved in 2020, at which time he was moved to the Vice President of Training position. He also held the position of Vice President of Global Business Operations from approximately 2011 through 2014 and prior to that he held the position of Director of Global Business Operations for approximately 2004-2011.  As the Director of Global Business Operations, Glasgow managed areas of the business, including demonstrations and loans of equipment as well as the sale of used equipment.  Glasgow continued

to manage demonstrations and loans of equipment and the sale of used equipment as the Vice President of Global Business Operations.

72.     As Vice President of Global Service and Support Operations, Glasgow led the training component of the Global Service and Support business unit and was responsible for, among other things, creating internal employee training programs as well as developing and delivering training programs and strategies to meet customer needs.

73.     In or around July 2020, Black Dragon purchased Grass Valley (and retains ownership of Grass Valley to this day).

74.     As a result of this acquisition, Grass Valley announced a reorganization, which was to impact the entire company, which included the Global Service and Support business unit.

75.     Prior to and throughout the re-organization, Grass Valley began moving its operations and jobs from the United States to Montreal, Quebec, Canada, replacing its U.S. workforce with Canadian employees.

76.     While Global Service and Support did eliminate some of its service engineers, many were reassigned to the specific product lines to provide customers with technical support.

77.     The training function remained centralized as there continued to be a need to create training content for all its existing and new products and software.

78.     This required collaborating with all product lines to get input and expertise of the technical experts.

79.     It was Glasgow's responsibility to work with these technical experts to create effective training content for employees and customers.

80.     Glasgow was among the most qualified within the organization to do so.

81.     Glasgow was also responsible for running the Learning Management System, which was utilized to deliver customer and employee training.

82.     At the time, Glasgow was the only one experienced enough to coordinate and implement that system.

83.     Such responsibilities were needed regardless of the reorganization of the Global Service and Support unit.

84.     On November 29, 2021, Grass Valley notified Glasgow that it had eliminated his job because his position was redundant, and he was no longer needed.

85.     His termination was effective December 15, 2021.

86.     Black Dragon and leaders from GV USA and GV Corporate participated in the decision to terminate Glasgow.

87.     Glasgow was 63 years of age at the time of his termination.

88.     Glasgow was living in Hillsborough County when he received notice of his position elimination from Chris Blomquist, the Human Resources Director for Grass Valley and Costa Nikols, the Vice President of Sales Support.

89.     However, contrary to its claim, Grass Valley did not eliminate his position at all.

90.     Instead, in November 2021, Grass Valley gave Glasgow's position and duties to a White Canadian-born employee, Greg Dacres ("Dacres").

91.     Dacres was in his 40's in November 2021 and is substantially younger than Glasgow.

92.     Dacres works in Montreal, Quebec, Canada.

93.     Prior to his departure, Glasgow had to train and transition his duties to Dacres.

94.     Grass Valley had Glasgow perform these training duties remotely from Glasgow's home in Florida.

95.     As part of the reduction in force, Grass Valley published a set of criteria it was supposed to use to evaluate and select individuals for elimination.

96.     More specifically, Grass Valley claimed that it considered skill set, experience, and the elimination of work at all locations in determining which employees were eligible to have their positions eliminated as part of the reduction in force.

97.     Glasgow asked Blomquist whether the skills assessment based on these criteria had been performed, and Blomquist indicated that one was not done for his position.

98.     Grass Valley intentionally ignored this selection criterion and failed to consider Glasgow's skill set and experience when evaluating Glasgow and Dacres for elimination.

99.   Grass Valley gave Dacres the title of Director of Training and Demonstration, despite the fact that he did not have any previous training experience and did not have the same experience or job knowledge as Glasgow. Glasgow had equivalent or greater experience in demonstrations and loans as Glasgow created and implemented this process for Grass Valley in the past.

100.   Of the two candidates, Glasgow was the most qualified candidate, having worked for 27 years for the company (six of those years managing the training functions) and having the most recent knowledge, experience and skills in the newly implemented Learning Management System that was used Grass Valley-wide.

101.   Glasgow also had years of experience in demonstrations, loans, and used equipment sales, having previously created all these processes for Grass Valley in a previous role.

102.   By comparison, Dacres had approximately 16 years working with Grass Valley and had not previously held any Vice President level positions or other executive-level positions above Director, as did Glasgow.

103.   Significantly, in an effort to cover up its discriminatory animus, during Glasgow's termination notification meeting, Grass Valley told Glasgow that it would need him as an independent contractor (without any protections as an employee) to manage the transition of the Learning Management System to an internal platform because neither his replacement nor anyone else possessed the skill set to complete this transition.

104.   Upon information and belief, and subject to investigation, Defendants interfered with Glasgow's right to make and enforce his employment contract with Grass Valley.

105.   Grass Valley's need for Glasgow to transition the training system to an internal platform further shows that Grass Valley needed his experience and skill set but wanted to strip him of his legal protections as an employee.

106.   Upon information and belief, as part of the reduction in force, to comply with the Older Workers Benefit Protection Act, Grass Valley had to identify the positions and ages of employees impacted by the reduction in force as well as the positions and ages of those employees who were not impacted by the reduction in force.

107.   In so doing, Grass Valley inflated the numbers of older workers retained as part of the reduction to mislead employees included in the reduction and cover up age discrimination.  For example, upon information and belief:

a.   The OWBPA list identifies at least one older worker (69 years of age) in the position of Senior Project Manager, as not selected for the reduction in force and retained for employment, even though and upon information and belief, such employee actually resigned and/or retired well before the reduction in force at issue.  Given his long tenure and position within the company, Glasgow knew of no other employee aged 69 that Grass Valley retained for employment.

## COUNT I
## <u>Age Discrimination in Violation of the ADEA</u>
(As to Defendants GV USA, GV Corporate and Black Dragon)

108.   Glasgow hereby incorporates by reference and re-alleges paragraphs 1 through 107(a) of this Complaint as if set forth completely herein.

109.   Glasgow was and is qualified for his position of Vice President of Training and the Director of Training and Demonstration position.

110.   Glasgow suffered an adverse employment action when Defendants terminated his employment.

111.   The real reason Defendants terminated Glasgow is because of his age, which constitutes illegal age discrimination and an unlawful employment practice.

112.   As such, Defendants discriminated against Glasgow and subjected him to disparate treatment based upon his age in violation of the ADEA.

113.   As a result of the foregoing actions, Glasgow suffered lost wages and benefits, and he will continue to suffer these damages in the future.

114.   The actions alleged above have caused and continue to cause irreparable harm to Glasgow, for which there is no full, complete, or adequate remedy at law.

115.   As a result of the foregoing actions, Glasgow is entitled to recover his attorneys' fees, costs and other litigation expenses from Defendants if he prevails in this action pursuant to <u>29 U.S.C. § 626(b)</u> and <u>29 U.S.C. § 216(b)</u>.

WHEREFORE, Glasgow respectfully requests that this Court:

A.   Declare the actions of Defendants to be illegal age discrimination in

violation of the ADEA;

B.     Award Glasgow injunctive relief, including but not limited to permanently enjoin Defendants from future violations of the ADEA, requiring Defendants to effectively plan, develop, undertake, implement, and monitor a plan designed to ensure that their employees are not subjected to discrimination, including but not limited to training for employees and management, and for this Court to retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein;

C.     Reinstate Glasgow with all benefits as if Defendants had retained him, including instating all seniority rights, making retroactive contributions to his retirement account(s), and providing all other benefits to which Glasgow would have been entitled had he not been discriminated against, or in the alternative, awarding Glasgow front pay and the value of said benefits in lieu of reinstatement;

D.     Award Glasgow his lost wages and benefits, including interest thereon;

E.     Awarding Glasgow a "gross-up" sum to offset any increased tax liability for receiving a lump sum of several years' backpay;

F.     Award Glasgow liquidated damages in an amount equal to the compensation awarded due to Defendants' lack of good faith;

G.     Award Glasgow the reasonable attorneys' fees, costs and expenses

incurred in this matter pursuant to <u>29 U.S.C. § 626(b)</u> and <u>29</u> U.S.C. § 216(b);

H.     Award pre-judgment and/or post-judgment interest as appropriate; and

I.     Award Glasgow such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT II
## <u>Age Discrimination in Violation of the FCRA</u>
(As to Defendants GV USA, GV Corporate and Black Dragon)

116.   Glasgow hereby incorporates by reference and re-alleges paragraphs 1 through 107(a)  of this Complaint as if set forth completely herein.

117.   Glasgow was and is qualified for his position of Vice President of Training and the Director of Training and Demonstration position.

118.   Glasgow suffered an adverse employment action when Defendants terminated his employment.

119.   The real reason Defendants terminated Glasgow is because of his age, which constitutes illegal age discrimination and an unlawful employment practice.

120.   As such, Defendants discriminated against Glasgow and subjected him to disparate treatment based upon his age in violation of the FCRA.

121.   As a result of the foregoing actions, Glasgow suffered lost wages and benefits and he will continue to suffer these damages in the future.

122.   As a result of the foregoing actions, Plaintiff suffered loss of enjoyment of life, loss of dignity, emotional and mental distress, loss of his professional reputation, and other intangible injuries.

123.   The actions alleged above have caused and continue to cause, irreparable harm to Glasgow, for which there is no full, complete or adequate remedy at law.

124.   The conduct of Defendants and their agents was so willful, wanton, intentional, and/or malicious, and in such reckless disregard of Glasgow's statutory rights, as to entitle him to an award of exemplary damages.  This award is intended to punish Defendants and deter them and others from engaging in such conduct in the future.

125.   As a result of the foregoing actions, Glasgow is entitled to recover his attorneys' fees, costs, and other litigation expenses from Defendants if he prevails in this action pursuant to the FCRA.

**WHEREFORE**, Glasgow respectfully requests that this Court:

A.   Declare the actions of Defendants to be illegal age discrimination in violation of the FCRA;

B.   Award Glasgow injunctive relief, including but not limited to permanently enjoin Defendants from future violations of the FCRA, requiring Defendants to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that their employees are not subjected to discrimination, including but not

limited to training for employees and management, and for this Court to retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein;

C.      Award Glasgow his lost wages and benefits, including interest thereon;

D.      Awarding Glasgow a "gross-up" sum to offset any increased tax liability for receiving a lump sum of several years' backpay;

E.      Reinstate Glasgow with all benefits as if Defendants had retained him, including instating all seniority rights, making retroactive contributions to his retirement account(s), and providing all other benefits to which Glasgow would have been entitled had he not been discriminated against, or in the alternative, awarding Glasgow front pay and the value of said benefits in lieu of reinstatement;

F.      Award Glasgow compensatory damages;

G.      Award Glasgow punitive damages;

H.      Award Glasgow the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to the FCRA; and

I.      Award Glasgow such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT III
## National Origin Discrimination in Violation of Title VII
(As to Defendants GV USA, GV Corporate and Black Dragon)

126.   Glasgow hereby incorporates by reference and re-alleges paragraphs 1 through 107(a) of this Complaint as if set forth completely herein.

127.   Glasgow is a member of a protected class in that national origin is American.

128.   Title VII forbids Defendants from discriminating on the basis of an individual's national origin/citizenship.

129.   Defendants subjected Glasgow to disparate treatment and discrimination by terminating Glasgow because of his national origin in violation of Title VII.

130.   As a result of the foregoing actions, Glasgow suffered lost wages and benefits and he will continue to suffer these damages in the future.

131.   As a result of the foregoing actions, Glasgow suffered emotional distress, mental anguish, loss of enjoyment of life, loss of dignity, and other intangible injuries.

132.   The conduct of Defendants and their agents was so willful, wanton, intentional, and/or malicious and in such reckless disregard of Glasgow's statutory rights, as to entitle him to an award of exemplary damages. This award is intended to punish Defendants and deter them and others from engaging in such conduct in the future.

133.   Glasgow is entitled to recover his attorneys' fees, costs, and other litigation expenses from Defendants if he prevails in this action pursuant to Title VII.

**WHEREFORE,** Glasgow respectfully requests that this Court:

A.   Declare the actions of Defendants to be illegal national origin discrimination in violation of Title VII;

B.   Award Glasgow injunctive relief, including but not limited to permanently enjoin Defendants from future violations of Title VII, requiring Defendants to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that their employees are not subjected to discrimination, including but not limited to training for employees and management, and for this Court to retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein;

C.   Award Glasgow his lost wages and benefits, including interest thereon;

D.   Awarding Glasgow a "gross-up" sum to offset any increased tax liability for receiving a lump sum of several years' backpay;

E.   Reinstate Glasgow with all benefits as if Defendants had retained him, including instating all seniority rights, making retroactive contributions to his retirement account(s), and providing all other benefits to which Glasgow would have been entitled had he not been

discriminated against, or in the alternative, awarding Glasgow front pay and the value of said benefits in lieu of reinstatement;

F.      Award Glasgow compensatory damages;

G.      Award Glasgow punitive damages;

H.      Award Glasgow the reasonable attorneys' fees, costs, and expenses incurred in this matter pursuant to Title VII; and

I.      Award Glasgow such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## COUNT IV
### Ancestry/ Race/ Ethnicity Discrimination in Violation of Section 1981
(As to Defendants GV USA, GV Corporate and Black Dragon)

134.    Glasgow hereby incorporates by reference and re-alleges paragraphs 1 through 107(a) of this Complaint as if set forth completely herein.

135.    Glasgow is a White American of Scottish ancestry.

136.    Grass Valley maintains worldwide headquarters located in Montreal, Quebec, Canada.

137.    Defendants subjected Glasgow to disparate treatment and discrimination by terminating Glasgow because of his race, ethnicity, and ancestry by interfering with Glasglow's ability to make and enforce contracts regarding the terms, conditions, and privileges of Glasgow's employment, in violation of Section 1981.

138.   Defendants acted intentionally, purposefully, maliciously, and/or with reckless indifference to Glasgow's federally protected rights by terminating him and adversely affecting his employment benefits based on his ancestry/ ethnicity / race in violation of Section 1981.

139.   As a result of the foregoing actions, Glasgow suffered lost wages and benefits and he will continue to suffer these damages in the future.

140.   As a result of the foregoing actions, Glasgow suffered emotional distress, mental anguish, loss of enjoyment of life, loss of dignity, and other intangible injuries.

141.   The conduct of Defendants and their agents was so willful, wanton, intentional, and/or malicious and in such reckless disregard of Glasgow's statutory rights, as to entitle him to an award of exemplary damages. This award is intended to punish Defendants and deter them and others from engaging in such conduct in the future.

142.   Glasgow is entitled to recover his attorneys' fees, costs, and other litigation expenses from Defendants if he prevails in this action pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Glasgow respectfully requests that this Court:

A.   Declare the actions of Defendants to be illegal race/ethnicity/ancestry discrimination in violation of Section 1981;

B.   Award Glasgow injunctive relief, including but not limited to permanently enjoin Defendants from future violations of Section

1981, requiring Defendants to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that their employees are not subjected to discrimination, including but not limited to training for employees and management, and for this Court to retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein;

C.   Award Glasgow his lost wages and benefits, including interest thereon;

D.   Awarding Glasgow a "gross-up" sum to offset any increased tax liability for receiving a lump sum of several years' backpay;

E.   Reinstate Glasgow with all benefits as if Defendants had retained him, including instating all seniority rights, making retroactive contributions to his retirement account(s), and providing all other benefits to which Glasgow would have been entitled had he not been discriminated against, or in the alternative, awarding Glasgow front pay and the value of said benefits in lieu of reinstatement;

F.   Award Glasgow compensatory damages;

G.   Award Glasgow punitive damages;

H.   Award Glasgow the reasonable attorneys' fees, costs, and expenses incurred in this matter pursuant to Section 1981 and 42 U.S.C. § 1988; and

I.   Award Glasgow such other relief as the Court deems just and

appropriate including without limitation any actual or nominal damages warranted.

## COUNT V
## National Origin Discrimination in Violation of the FCRA
(As to Defendants GV USA, GV Corporate and Black Dragon)

143.   Glasgow hereby incorporates by reference and re-alleges paragraphs 1 through 107(a) of this Complaint as if set forth completely herein.

144.   Glasgow is a member of a protected class in that national origin is American.

145.   The FCRA forbids Defendants from discriminating on the basis of an individual's national origin.

146.   Defendants subjected Glasgow to disparate treatment and discrimination by terminating Glasgow because of his national origin in violation of the FCRA.

147.   As a result of the foregoing actions, Glasgow suffered lost wages and benefits and he will continue to suffer these damages in the future.

148.   As a result of the foregoing actions, Glasgow suffered emotional distress, mental anguish, loss of enjoyment of life, loss of dignity, and other intangible injuries.

149.   The conduct of Defendants and their agents was so willful, wanton, intentional, and/or malicious and in such reckless disregard of Glasgow's statutory rights, as to entitle him to an award of exemplary damages. This award is intended

to punish Defendants and deter them and others from engaging in such conduct in the future..

150.   Glasgow is entitled to recover his attorneys' fees, costs, and other litigation expenses from Defendants if he prevails in this action pursuant to the FCRA.

**WHEREFORE,** Glasgow respectfully requests that this Court:

A.   Declare the actions of Defendants to be illegal national origin discrimination in violation of the FCRA;

B.   Award Glasgow injunctive relief, including but not limited to permanently enjoin Defendants from future violations of the FCRA, requiring Defendants to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that their employees are not subjected to discrimination, including but not limited to training for employees and management, and for this Court to retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein;

C.   Award Glasgow his lost wages and benefits, including interest thereon;

D.   Awarding Glasgow a "gross-up" sum to offset any increased tax liability for receiving a lump sum of several years' backpay;

E.   Reinstate Glasgow with all benefits as if Defendants had retained him, including instating all seniority rights, making retroactive

contributions to his retirement account(s), and providing all other benefits to which Glasgow would have been entitled had he not been discriminated against, or in the alternative, awarding Glasgow front pay and the value of said benefits in lieu of reinstatement;

F.   Award Glasgow compensatory damages;

G.   Award Glasgow punitive damages;

H.   Award Glasgow the reasonable attorneys' fees, costs, and expenses incurred in this matter pursuant to the FCRA; and

I.   Award Glasgow such other relief as the Court deems just and appropriate including without limitation any actual or nominal damages warranted.

## **DEMAND FOR JURY TRIAL**

151.   Glasgow demands a trial by jury on all issues so triable.

Dated: January 4, 2024.

Respectfully Submitted,

_/s/ Amanda L. Biondolino_
Amanda L. Biondolino, Lead Counsel
Florida Bar No. 1008493
Adria Lynn Silva, Esquire
Florida Bar No. 0137431
Cynthia N. Sass, Esquire
Florida Bar No. 0691320
**SASS LAW FIRM**
601 West Dr. Martin Luther King, Jr. Boulevard
Tampa, Florida 33603
Telephone: (813) 251-5599
Facsimile: (813) 259-9797

**DESIGNATION OF E-MAIL SERVICE**:
**Primary**:   abiondolino@sasslawfirm.com
**Secondary**:  sbartlett@sasslawfirm.com
**Primary**:   csass@sasslawfirm.com
**Secondary**: reception@sasslawfirm.com
**Primary**: asilva@sasslawfirm.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th of January, 2024, the foregoing was uploaded to the Clerk's CM/ECF electronic filing system that will send notification to all parties who have entered an appearance.

 /s/ Amanda L. Biondolino

Attorneys for Plaintiff